**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WIDALLYS RIVERA-QUIÑONES,
A.V.R. (MINOR),

    **Plaintiffs,**

       **v.**

DEPARTMENT OF EDUCATION OF
PUERTO RICO,
COMMONWEALTH OF PUERTO RICO,

    **Defendants.**

**Civil No.** 15-1184 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

    On March 3, 2015, Widallys Rivera-Quiñones ("Rivera") personally and on behalf of her minor daughter "AVR" (collectively, "plaintiffs") brought suit against the Puerto Rico Department of Education and the Commonwealth of Puerto Rico (collectively, "defendants"). (Docket No. 1.) Plaintiffs' claims are two-fold. First, they allege that defendants' failure to make various school facilities and equipment accessible to AVR, who uses a wheelchair, constitutes a violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Second, plaintiffs claim that defendants' failure to reimburse Ms. Rivera for transportation costs incurred by driving AVR to school and therapy sessions constitutes a violation of the IDEA.

Plaintiffs moved the Court for a preliminary injunction on both claims.  (Docket No. 2.)   On April 9, 2015, defendants answered the complaint, (Docket No. 29), and moved to dismiss, (Docket No. 28).  The Court held a preliminary injunction hearing on April 10, 2015.  On April 17, 2015, plaintiffs opposed the motion to dismiss, (Docket No. 42), and moved for summary judgment on their transportation reimbursement claim, (Docket No. 44).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss, (Docket No. 28). With respect to plaintiffs' transportation reimbursement claim, the Court **HOLDS IN ABEYANCE** plaintiffs' unopposed motions for a preliminary injunction, (Docket No. 2), and for summary judgment, (Docket No. 44).  The Court **ORDERS** defendants to submit to the Court the cost estimates for building a ramp to the library and for building ceilings on the ramps at AVR's school, and to inform the Court on the status of obtaining funds to execute this building project, no later than **May 11, 2015.**  The Court also **ORDERS** the parties to notify the Court on the status of the exchange of AVR's attendance certifications and transportation reimbursement payments no later than **May 11, 2015.**

## I.   BACKGROUND

## A.   Factual Allegations[1]

AVR has been diagnosed with *spina bifida*, hydrocephalia, and cerebral palsy, and requires a wheelchair to move from one place to another.  (Docket No. 1 ¶ 12.)  She is registered with the Puerto Rico Department of Education ("PR DOE") as a student with disabilities and currently attends Mariano Feliú Balseiro School ("MFB School").  Id. at ¶¶ 13, 23.  Her mother, Ms. Rivera, drives AVR to MFB School and to therapy sessions.  Id. at ¶ 24.

MFB School does not have wheelchair access to its library.  (Docket No. 1 at ¶ 26.)  Therefore, AVR cannot go to the library with her classmates who are able to walk.  Id. at ¶ 27.  Furthermore, the ramps to the second floor of MFB School and to the bathroom designated for AVR to use her catheter at school do not have ceilings, making those places inaccessible to AVR when it rains.  (Docket No. 39-1 at p. 2.)[2]

MFB School has an independent living classroom in which, pursuant to AVR's Individualized Education Plan ("IEP"), AVR is

---

[1] The Court draws these factual allegations from plaintiffs' complaint, (Docket No. 1), unless otherwise noted.

[2] Plaintiffs originally alleged in their complaint that there is no wheelchair access to the second floor, that there is no ceiling on a ramp that provides access to first floor classrooms, and that the area designated for AVR to use her catheter does not have a ceiling.  (Docket No. 1 at ¶¶ 26-30.)  Plaintiffs corrected these misstatements at the hearing held on April 10, 2015, and in their subsequent filing, see Docket No. 39-1 at p. 2.

supposed to develop skills that will allow her to become as self-sufficient as possible. (Docket No. 1 at ¶ 31.) One of these skills is cooking. Id. The cooking equipment, or part of it, in the independent living classroom, however, is set at a height out of AVR's reach, and she is consequently hindered from developing this skill in class. Id. at ¶¶ 32-33. The independent living classroom also lacks air conditioning. Id. at ¶ 34. Because AVR's wheelchair and the MFB School uniform are black, the heat causes AVR to develop urinary infections. Id.

**B.   Defendants' Admissions**

In their answer to plaintiffs' complaint, defendants admit that AVR suffers from *spina bifida*, hydrocephalia, and cerebral palsy, and that she is registered with the PR DOE as a student with disabilities. (Docket No. 29 at ¶¶ 3-4.) Defendants also admit in their answer that there is no wheelchair access to the library at AVR's school and that the ramp to the second floor at her school has no ceiling. Id. at ¶¶ 10, 12.

Counsel for defendants conceded in open court at the April 10, 2015, hearing (1) that a cost estimate and blueprints have been prepared to build a ramp to the library at MFB School; (2) that the ramp to the library will be built when funding is approved; (3) that building a ceiling on the ramps that lead to the second floor and to the area designated for AVR to use her catheter is also included in the same cost estimate; (4) that some of the cooking

equipment in the independent living classroom is out of AVR's
reach; (5) that MFB School will allow AVR to wear non-uniform
clothing to make her more comfortable in the heat; and (6) that MFB
School will add more fans to alleviate the heat in AVR's classroom.
(Prelim. Inj. Hr'g Tr. at pp. 2-3, 7, 11-13.)

**C.   Administrative Proceedings**

On October 2, 2014, plaintiffs filed an administrative
complaint based on two claims: transportation expenses
reimbursement and wheelchair access.  (Docket No. 50-1 at p. 2.)
Plaintiffs moved to dismiss voluntarily without prejudice the
wheelchair access claim on November 14, 2014.  Id.  The reason for
plaintiffs' voluntary dismissal of the wheelchair access claim has
not been made known to the Court.  Plaintiffs were represented in
the administrative proceedings by the same legal counsel
representing plaintiffs in this action.  See id. at p. 1.

On January 30, 2015, the administrative law judge ("ALJ")
ruled on the transportation claim.  (Docket No. 50-1.)  He
concluded that the Special Education Transportation Division of the
PR DOE must follow the Education Secretary's guidelines, which
indicate that the transportation reimbursement rates for the 2013-
2014 academic year are those established by the Public Service
Commission.  Id. at p. 9.  The ALJ also concluded that the rate of
$0.40 per mile applies to transportation reimbursement for the
2014-2015 academic year.  Id.  The ALJ ordered the PR DOE, "upon

receiving certifications from Complainant regarding attendance to school and therapy, and confirm[ing] the same were duly issued by the Public Service Commission, [to] pay Complainant within thirty (30) calendar days, what is owed for therapy sessions for the 2013-2014 school year, by following the Education Secretary's guidelines." Id. at p. 10.

## II. WHEELCHAIR ACCESS CLAIM

Defendants move to dismiss plaintiffs' wheelchair access claim, arguing that plaintiffs' failure to exhaust administrative remedies for that claim, as required by the IDEA, strips the Court of subject matter jurisdiction over the claim. (Docket No. 28 at pp. 9-12.)

Plaintiffs concede that they did not exhaust administrative remedies for their wheelchair access claim. (Docket No. 42 at pp. 2-5.) Plaintiffs argue, however, that they were entitled to bypass administrative remedies because exhausting those remedies would have been futile and would have caused irreparable harm to AVR. Id. Plaintiffs also contend that their wheelchair access claim, brought pursuant to both the IDEA and the ADA, can survive dismissal by standing on its ADA leg because the ADA has no exhaustion requirement. Id. at pp. 7-8. Plaintiffs finally urge the Court to find that defendants' admissions and stipulations at the April 10, 2015, hearing moot defendants' request for dismissal. Id. at p. 2.

**A.    The IDEA's Exhaustion Requirement**

The IDEA is a comprehensive statute enacted by Congress "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To achieve this objective, the IDEA requires state educational agencies that receive federal funds to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education."  Id. § 1415(a).

One of these required procedures is the opportunity for parents to present complaints related to alleged IDEA violations affecting their children.  Id. § 1415(b)(6).  A parent who brings an administrative complaint pursuant to 20 U.S.C. § 1415(b)(6) is entitled to an impartial due process hearing.  Id. § 1415(f).

Following the completion of this administrative process, the IDEA affords to "[a]ny party aggrieved by the findings and decision made" during or pursuant to the due process hearing the right to "bring a civil action with respect to the complaint presented" at the hearing "in a district court of the United States, without regard to the amount in controversy."  Id. § 1415(i)(2)(A).

Thus, before filing suit in federal court, the "IDEA mandates that plaintiffs exhaust administrative remedies through the due process hearing" detailed in 20 U.S.C. § 1415(f). Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000). "Failure to exhaust the [IDEA's] administrative remedies deprives the court of subject matter jurisdiction." Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008); accord Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014).

The exhaustion rule serves several important purposes, including enabling the agency "'to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes.'" Rose, 214 F.3d at 210 (quoting Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989)). The exhaustion requirement is also "'credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.'" Id. (quoting Christopher W., 877 F.2d at 1094).

**B.   Futility Exception to the IDEA's Exhaustion Requirement**

The IDEA's exhaustion requirement is not absolute. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 59 (1st Cir. 2002). Courts recognize limited exceptions to the exhaustion rule, and "a party who seeks to invoke an exemption bears the burden of showing that it applies." Id.

One recognized exception is "where the pursuit of administrative remedies would be futile or inadequate." Pihl v.

Mass. Dep't of Educ., 9 F.3d 184, 190 (1st Cir. 1993).  "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."  Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007) (internal quotation marks and citations omitted).

    Here, plaintiffs urge the Court to find that exhausting administrative remedies on their wheelchair access claim would have been futile.  (Docket No. 42 at p. 3.)  They explain "that since 2012, Rivera has been complaining to both the [PR] DOE and the MFB School about the deficiencies that have resulted in AVR being deprived of access to the school's facilities and equipment and that the [PR] DOE has not corrected these deficiencies."  Id.  Even accepting this allegation as true, PR DOE's pattern of ignoring informal complaints does not necessarily mean that lodging a formal administrative complaint would have been futile.

    Plaintiffs next argue futility by alleging that the PR DOE has exhibited a "pattern of non-compliance with ALJs' orders."  (Docket No. 42 at pp. 4-5.)  To support this allegation, plaintiffs point to two recent cases in which courts in this district have noted such non-compliance by the PR DOE.  They first cite Colon-Vazquez v. Dep't of Educ. of P.R., 46 F. Supp. 3d 132, 136-40 (D.P.R. 2014), in which Judge Fusté noted that the PR DOE did not comply

with an ALJ order to appoint a special education teacher and to hold an IEP Team meeting by certain deadlines. (Docket No. 42 at p. 4.) Plaintiffs next cite an unpublished order from <u>Fortes-Cortes v. Dep't of Educ.</u>, Civil No. 12-1900-GAG, Docket Entry 135, at *2 (D.P.R. Oct. 15, 2013), in which Judge Gelpí commented that "in the past [he] has noted a pattern of noncompliance by the [PR] DOE with final orders issued by [ALJs] . . . [but] the present administration worked diligently to resolve this case after January 2013." (Docket No. 42 at p. 4.)

Plaintiffs are essentially asking the Court to find that the PR DOE routinely ignores ALJ orders, and that this pattern of noncompliance renders futile the entire administrative procedure for IDEA violations in the Commonwealth of Puerto Rico. The two cases cited by plaintiffs do not constitute sufficient evidence for the Court to make this drastic finding. Thus, plaintiffs have not met their burden of showing that bringing their wheelchair access claim before an ALJ would have been futile.

**C.  Severe or Irreparable Harm Exception to the IDEA's Exhaustion Requirement**

A second recognized exception to the exhaustion requirement is where pursuing administrative remedies would "work severe or irreparable harm on the litigant." <u>Pihl</u>, 9 F.3d at 190. This exception "is consistent with the legislative history, which warns that exhaustion is not necessary when 'an emergency situation exists (e.g., the failure to take immediate action will adversely

affect a child's mental or physical health).'" <u>Rose</u>, 214 F.3d at 211 (quoting <u>Komninos v. Upper Saddle River Bd. of Educ.</u>, 13 F.3d 775, 778 (3d Cir. 1994) (quoting H.R. Rep No. 99-296, at 7 (1985))).  The First Circuit Court of Appeals cautions that the irreparable harm exception "'is to be sparingly invoked,'" noting that the Third Circuit has required plaintiffs to provide "'hard evidence that the child faces irreversible damage if the relief is not granted.'"  <u>Id.</u> at 212 (quoting <u>Komninos</u>, 13 F.3d at 779).

Here, plaintiffs argue that exhausting administrative remedies would have caused irreparable harm to AVR.  (Docket No. 42 at p. 3.)  Plaintiffs contend that not allowing AVR to have wheelchair access to the library deprives her of her right to a free appropriate public education ("FAPE") pursuant to the IDEA, and that it is "settled law" that a "'failure to provide a FAPE constitutes irreparable injury.'"  <u>Id.</u> at p. 4 (quoting <u>Lofton v. District of Columbia</u>, No. CV 13-1959 (RBW), 2013 WL 6710352, at *5 (D.D.C. Dec. 20, 2013) (quoting <u>Massey v. District of Columbia</u>, 400 F. Supp. 2d 66, 75 (D.D.C. 2005))).

Plaintiffs again fail to meet their burden.  First, plaintiffs' reliance on <u>Lofton</u> and <u>Massey</u> is misplaced.  Those cases held that a failure to provide a FAPE constituted irreparable injury in the context of determining whether the "irreparable injury" factor of the preliminary injunction test was met.  <u>See</u> <u>Lofton</u>, 2013 WL 6710352, at *2; <u>Massey</u>, 400 F. Supp. 2d at 74.  The

Civil No. 15-1184 (FAB)                                        12

"irreparable injury" factor in the preliminary injunction inquiry
is different from the "severe or irreparable harm" exception to the
exhaustion requirement: the latter is found only in "emergency
situations" where the child faces "irreversible damage." See Rose,
214 F.3d at 211-12.

    Second, plaintiffs offer no evidence as to the nature of the
irreparable injury that AVR faces.  Rather, they simply allege that
she is being deprived of her right to a FAPE. (Docket No. 42 at p.
4.)  If that were enough, then the "severe or irreparable harm"
exception would swallow the exhaustion requirement because nearly
all IDEA-based claims allege deprivation of a FAPE.  All parents
alleging that their children are being denied a FAPE would be able
to use the "irreparable harm" exception to bypass IDEA's
administrative process and come straight to federal court.  This
"would subvert not only the very existence of a mandatory
exhaustion requirement but also the overall scheme that Congress
envisioned for dealing with educational disabilities." Frazier,
276 F.3d at 63.

    The Court thus finds that plaintiffs have not met their burden
of showing that exhausting administrative remedies on their
wheelchair access claim would have worked severe or irreparable
harm on AVR.

**D.   The IDEA's Exhaustion Requirement and Plaintiffs' ADA Claim**

Plaintiffs next argue that the IDEA's exhaustion requirement does not preclude them from bringing their "separate and discrete" wheelchair access claim pursuant to the ADA.  (Docket No. 42 at pp. 8-9.)  Plaintiffs' argument is unavailing.

Section 1415(l) of the IDEA reads:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added).  The "procedures under subsections (f) and (g)" are the due process hearing before the local or state educational agency and, if conducted by the local educational agency, then the appeal to the state educational agency.  Id. § 1415(f)-(g).  Thus, the IDEA is clear that "a non-IDEA claim that seeks relief also available under the IDEA must be exhausted administratively through the IDEA's due process hearing procedures before it can be brought in a civil action in state or federal court."  D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 39 n.5 (1st Cir. 2012); accord Rose, 214 F.3d at 210 ("[The IDEA exhaustion requirement] applies even when the suit is

Civil No. 15-1184 (FAB)                                              14

brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA.").

Here, plaintiffs concede that they did not exhaust the IDEA administrative remedies on their wheelchair access claim before filing their ADA claim in this action.   Therefore, the only question is whether plaintiffs seek relief available under the IDEA.   On their wheelchair access claim, plaintiffs seek a "preliminary injunction ordering defendant to immediately provide AVR with the access to the needed facilities at the MFB School and to the equipment to which she is entitled as part of her educational services under the IDEA," among other things. (Docket No. 1 at p. 9.)   The IDEA empowers courts to issue injunctive relief, see Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 116 (1st Cir. 2003), and requires states to have procedures for any party to present a complaint "with respect to any matter relating to the provision of a free appropriate public education to [the] child," 20 U.S.C. § 1415(b)(6)(A).   Thus, the relief plaintiffs seek on their wheelchair access claim is available under the IDEA.   Indeed, by bringing their wheelchair access claim pursuant to both the IDEA and the ADA, plaintiffs implicitly concede that they seek relief available under the IDEA.

The Court briefly addresses plaintiffs' flawed argument to correct their misunderstanding of the law.   Plaintiffs rely on the explanation by the First Circuit Court of Appeals in Lebron v.

Civil No. 15-1184 (FAB)                                                  15

Puerto Rico that "denying a child a free appropriate public education on account of his disability could, for instance, be a valid basis for a claim under either the Rehabilitation Act or the ADA, even if the factual basis for those claims might overlap with that of an IDEA claim." 770 F.3d 25, 30-31 (1st Cir. 2014). This statement is inapposite for purposes of the current issue because Lebron does not address the IDEA's exhaustion requirement. Plaintiffs are correct in stating that they are "not precluded from suing under the ADA and its amendments because AVR is entitled to su[e] the [PR] DOE for its failure to accommodate her physical needs and [for] its discrimination of her as a qualified individual under the ADA," (Docket No. 42 at p. 8). But having the right to bring an ADA suit does not mean plaintiffs need not exhaust IDEA administrative remedies before exercising that right.

    In conclusion, plaintiffs' argument that their ADA claim based on wheelchair access should survive dismissal because it is "separate and discrete" from their IDEA claim based on wheelchair access is unpersuasive. Because their ADA claim seeks relief available pursuant to the IDEA, plaintiffs had to invoke IDEA's due process hearing procedures for their wheelchair access claim before filing suit on that claim pursuant to the ADA.

**E.  Defendants' Admissions and Offer to Settle**

    Plaintiffs finally aver that at the preliminary injunction hearing, defendants agreed to construct a ramp to the library and

to build roofs on the ramps that lead to the second floor and to
the room where AVR uses her catheter.  (Docket No. 42 at p. 2.)
Plaintiffs also state that defendants agreed to settle plaintiffs'
wheelchair access claim.  Id.  Plaintiffs argue that because of
these stipulations and settlement offer on the wheelchair access
claim, defendants' request for dismissal of that claim is moot.
Id.

The Court first clarifies defendants' statements.  At the
hearing on April 10, 2015, defendants stated that they have a cost
estimate and blueprints to build a ramp to the library, and that
they have a cost estimate to build a roof on the ramps to the
second floor and to the area where AVR uses her catheter.  (Prelim.
Inj. Hr'g Tr. at pp. 2-3, 11.)  Defendants indicated that "[a]ll
[they] need is to have the funds approved and [they will] break
ground as soon as [the funds are approved]."  Id. at p. 2.
Defendants also stated that they would be open to resolving the
case "by way of a settlement" without "convert[ing] it [in]to an
injunction."  Id. at p. 26.  Plaintiffs responded indicating that
they would prefer an injunction.  Id.

Plaintiffs cite no authority that holds that a defendant's
offer to resolve a claim by way of settlement moots that
defendant's motion to dismiss that claim for lack of subject matter

jurisdiction.[3]   The Court has found none either, and therefore finds plaintiffs' argument unpersuasive.

## F.  Conclusion

Plaintiffs concede that they did not exhaust the IDEA administrative remedies for their wheelchair access claim.  Having found that plaintiffs did not meet their burden of showing that an exception excused their failure to exhaust IDEA's administrative remedies, the Court **GRANTS** defendants' motion to dismiss without prejudice plaintiffs' IDEA-based wheelchair access claim.  Because plaintiffs seek relief available pursuant to the IDEA, the Court **GRANTS** defendants' motion to dismiss plaintiffs' ADA-based wheelchair access claim, also without prejudice.

Although the Court must dismiss plaintiffs' wheelchair access claim due to the aforementioned procedural defect, it would be a great injustice for defendants to continue to deny AVR access to facilities and equipment at her school while she endeavors to overcome the procedural obstacles required by statute.  This is especially true in light of defendants' admission that AVR is being

---

[3] As for cited legal authority, plaintiffs offer only the proposition that "'[a] partial settlement moots the issues involved in the settlement, but not those that the parties did not intend to settle.'"  See Docket No. 42 at p. 2 (quoting Laffey v. Begin, 137 F. App'x 362, 363 (1st Cir. 2005) (quoting 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3533.2 (2d ed. 1984))). This proposition is inapplicable here because there is no partial settlement; defendants have only indicated that they would be open to a settlement, and plaintiffs responded that they would prefer an injunction.

denied access to certain facilities and equipment and considering the steps defendants have already taken to ameliorate these problems, such as obtaining building cost estimates and blueprints. Notwithstanding defendants' concessions and efforts, the Court would be remiss to ignore the PR DOE's history of delinquency and not acting with urgency when it comes to guaranteeing the rights of special education students. Accordingly, to avoid unnecessary and unjust delay for AVR, the Court **ORDERS** defendants to submit to the Court the cost estimates for building a ramp to the library and for building ceilings on the ramps to the second floor and to the room where AVR uses her catheter. Additionally, the Court **ORDERS** defendants to inform the Court on the status of obtaining funds to execute this building project.

### III.  TRANSPORTATION REIMBURSEMENT CLAIM

**A.  Procedural Background**

Defendants moved to dismiss plaintiffs' claim for reimbursement of transportation expenses on April 9, 2015. (Docket No. 28.) Defendants argued that the transportation reimbursement claim was moot, thus depriving the Court of jurisdiction, because plaintiffs had already been reimbursed. Id. at p. 12. Defendants explained that plaintiffs were issued four checks for reimbursement of transportation for the 2013-2014 year, totaling $481.40, and that plaintiffs were to be issued payment for the 2014-2015 at the preliminary injunction hearing. Id.

At the hearing on April 10, 2015, plaintiffs stated that they did accept a payment from the PR DOE for the 2013-2014 academic year, but that the amount was less than the amount due. (Prelim. Inj. Hr'g Tr. at pp. 14, 19-20.)   The parties also informed the Court that, on that day, defendants offered plaintiffs two checks, totaling $1,681.60, for transportation expenses incurred August-December 2014, and that plaintiffs accepted those checks with a reservation.   Id. at pp. 21-23.   Because there was apparent confusion about how to calculate the amount owed to plaintiffs, the Court ordered both parties to file simultaneous memoranda as to the transportation reimbursement issue by April 17, 2015.   See Docket No. 30 at p. 2.

Plaintiffs complied with that order by filing a memorandum in the form of a motion for summary judgment on the transportation reimbursement claim.   (Docket No. 44.)   Plaintiffs calculate that the total amount of transportation reimbursement for the 2013-2014 academic year is $3,768.20.   Id. at p. 6.   Plaintiffs contend that they do not understand how to calculate the reimbursement for the 2014-2015 academic year, so they are "not in a position to know whether the checks that were given to them during the April 10, 2015 hearing are correct."   Id. at p. 7.

Defendants did not file a memorandum on the transportation issue by the April 17th deadline, ignoring the Court's order. Consequently,   the   Court   ordered   defendants   to   respond   to

plaintiffs' motion for partial summary judgment by April 21, 2015. (Docket No. 48.)   Defendants complied by filing a two-page informative motion on April 21, 2015.  (Docket No. 49.)   In their informative motion, defendants state that they "are currently in the process of issuing Plaintiffs' payment" and that "[p]ayment for transportation expenses is being worked on and will be shortly issued." Id. at ¶¶ 7-8.  Defendants also assure the Court that they "will formally brief the Court on [their] position regarding this matter." Id. at ¶ 6.

**B.   Motion to Dismiss**

From defendants' most recent concession that "[p]ayment for transportation expenses is being worked on and will be shortly issued," (Docket No. 49 at ¶ 8), it is evident that defendants have abandoned their original contention that plaintiffs were fully reimbursed, see Docket No. 28 at p. 12.  Because this contention was defendants' sole argument in moving to dismiss plaintiffs' transportation reimbursement claim, the Court **DENIES** defendants' motion to dismiss that claim.

**C.   "Party Aggrieved"**

Before ruling on plaintiffs' unopposed motions for a preliminary junction and for summary judgment on their transportation reimbursement claim, the Court questions whether plaintiffs had the right to bring this suit in the first place. The IDEA affords the right to bring suit in federal court only to

a "party aggrieved" by the findings and decision made pursuant to
the administrative due process hearing.  20 U.S.C. § 1415(i)(2)(A).
Parties "who are aggrieved by the school system's failure to appeal
from and to comply with the hearing officer's continuing, valid,
and final order" are "parties aggrieved" for purposes of the IDEA.
Nieves-Marquez, 353 F.3d at 116.  Here, plaintiffs assert that they
are a "party aggrieved" because defendants have not complied with
the ALJ's order.   (Docket No. 1 at ¶¶ 40-42.)   Specifically,
plaintiffs claim that the thirty-day period ordered by the ALJ for
defendants to pay plaintiffs has elapsed and full payment has not
been received.   Id.

    In their complaint, in their motion for summary judgment, and
in their statement of uncontested material facts, plaintiffs seem
to state, or at least imply, that the thirty-day period commenced
when the ALJ issued his ruling on January 30, 2015.[4]   The ALJ
actually ordered the thirty-day period to commence *upon defendants'*
*receipt of certifications from plaintiffs* regarding AVR's
attendance to school and therapy.   (Docket No. 50-1 at p. 10.)

---

[4] See Docket No. 1 at ¶ 40 ("On January 30, 2015, the [ALJ] issued
his ruling regarding [plaintiffs'] complaint and ordered the [PR]
DOE to pay for all pending transportation expenses corresponding to
the 2013-2014 and 2014-2015 academic years, within a term of thirty
days."); Docket No. 44 at p. 4 ("The ALJ issued his Ruling on
January 30, 2015[,] and clearly ordered that the [PR] DOE had to
make the pending payments within the term of thirty (30) days.");
Docket No 45 at ¶ 16 ("The ALJ ordered the [PR] DOE to make the
pending payment for transportation expenses within the term of
thirty (30) days.").

This order is material because if plaintiffs never gave defendants AVR's attendance records, or if they gave defendants the records less than thirty days ago, the plaintiffs are not a "party aggrieved" entitled to bring suit.

On April 17, 2015, plaintiffs submitted to the Court the following certifications regarding AVR's attendance:

- School, August 2013 - May 2014, dated April 14, 2014,[5] (Docket No. 45-4);

- Therapy, August 2013 - June 2014, dated March 26, 2015, (Docket No. 45-5);

- Therapy, August-December 2014, dated April 16, 2015, (Docket No. 45-6).[6]

Plaintiffs have not informed the Court if and when these certifications were given to defendants, thus triggering the thirty-day period for defendants to issue payment. As such, the Court **HOLDS IN ABEYANCE** plaintiffs' unopposed motions for a preliminary injunction and for summary judgment on their transportation reimbursement claim.

## IV.  CONCLUSION

For the reasons explained above, the Court **GRANTS** defendants' motion to dismiss the wheelchair access claim, (Docket No. 28).

[5] The date of April 14, 2014, is an obvious error because the attendance certification includes the dates that AVR was absent in May 2014.

[6] Plaintiffs did not submit an attendance certification from AVR's school for August-December 2014.

Civil No. 15-1184 (FAB)                                                    23

The wheelchair access claim, brought pursuant to the IDEA and the ADA, is **DISMISSED WITHOUT PREJUDICE.**

With respect to plaintiffs' transportation reimbursement claim, the Court **DENIES** defendants' motion to dismiss, (Docket No. 28), and **HOLDS IN ABEYANCE** plaintiffs' unopposed motions for a preliminary injunction, (Docket No. 2), and for summary judgment, (Docket No. 44).

The Court **ORDERS** defendants to submit to the Court the cost estimates for building a ramp to the library and for building ceilings on the ramps at AVR's school, and to inform the Court on the status of obtaining funds to execute this building project, no later than **May 11, 2015.**  The Court also **ORDERS** the parties to notify the Court as to the status of the exchange of AVR's attendance certifications and transportation reimbursement payments no later than **May 11, 2015.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 4, 2015.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE